IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–01080–CMA–KMT

JONATHAN ABERKALNS, individually and on behalf of all Heirs
and as surviving natural son of
OSKARS ABERKALNS, Decedent,

    Plaintiffs,

v.

TRAVIS L. BLAKE, an individual and resident of Michigan, and
PRIORITY TRANSPORTATION LLC, a Delaware Corporation,

    Defendants.

## ORDER

This matter is before the court on "Defendants' Motion for Protective Order and to Strike Plaintiff's Endorsement of Frederick T. Martinez as a Witness" ("Mot.," Doc. No. 16) filed August 15, 2008. Plaintiff's response was filed on September 4, 2008 ("Resp.," Doc. No. 21), and Defendants' reply was filed on August 15, 2008 ("Reply," Doc. No. 22). The motion is GRANTED in part and DENIED in part as discussed below.

Defendants move for a protective order and to strike Frederick T. Martinez, one of the defense counsel, as a potential witness in this case. (Mot. at 1.) This case involves claims of negligence against Defendants for a motor vehicle accident on February 11, 2005, in which

Oskars Aberkalns was killed. (*Id.*) Plaintiff has identified Mr. Martinez as a potential witness in his Rule 26(a)(1) mandatory disclosures as follows:

> Attorney representing Travis Blake and Priority Transportation concerning the incident, who has knowledge of the subject incident, the facts and circumstances surrounding the same, the cause of death of Oskars Aberkalns, statements and interview by investigating authorities, and other matters involved in this case or alleged in the Complaint.

(Resp, Ex. C ¶ 56.) According to the unsigned case investigation affidavit of Detective Joseph Petrucelli, Mr. Martinez contacted him on February 16, 2005, advising he represented Priority Trucking. (*Id.*, Ex. B at 18.) Detective Petrucelli explained to Mr. Martinez that he needed a consent to search the vehicle. (*Id.*) Mr. Martinez advised Detective Petrucelli that there should be no problem with the consent to search and that his office would cooperate with the police in the investigation. (*Id.*) On February 21, 2005, Detective Petrucelli received the signed Consent to Search form by fax from Mr. Martinez, who asked for two days' notice before testing was started on the search. (*Id.*) On February 22, 2005, Detective Petrucelli advised Mr. Martinez that the inspection would be conducted on March 1, 2005, by the Colorado State Patrol at the Aurora Police Department Impound Lot. (*Id.*) On March 1, 2005, the Colorado State Patrol, as part of the Aurora Police Department's investigation into the accident, conducted an inspection test and accident reconstruction. (*Id.* at 19.) Mr. Martinez was present at the test. (*Id.*) In his affidavit, Detective Petrucelli also states he received Travis Blake's telephone records from Mr. Martinez. (*Id.*)

Defendants argue that Mr. Martinez was present at the accident reconstruction in his capacity as attorney for Priority Transportation. (*Id.* ¶ 2.) Defendants contend that Mr. Martinez

2

is not a witness, as all information he has was obtained in his capacity as attorney for the defendants.  (*Id.*)  As such, Defendants aver, the work-product privilege is invoked.  (*Id.* at 3.)

At the scheduling conference on July 30, 2008, this court was advised by co-counsel for Defendants, Lance Eberhart, of Defendants' concern that Mr. Martinez had been listed in Plaintiff's initial disclosures as a potential witness.  (Doc. No. 19, Tr. of Scheduling Conference at 12.)  Plaintiff's counsel, A. Gary Bell, agreed to submit to Defendants, on or before August 11, 2008, a letter concerning Mr. Martinez's status as a witness.  (*Id.* at 14.)  Mr. Bell stated:

> [i]f I could get a letter from Mr. Martinez indicating that he just occupied an attorney role, then it solves the whole problem.  I don't have any facts.  I mean, it just surprised us when his name . . . showed up in the disclosure documents that they were the attorneys on the criminal investigation, I believe.

(*Id.*, ll. 6–12.)  Mr. Eberhart stated that Mr. Martinez was "sort of the conduit in which information was provided from Priority Transportation to the police that were investigating the crime. . . ."  (*Id.*, ll. 18–21.)  However, Mr. Eberhart then clarified that Mr. Martinez's role was as attorney for Defendants.  (*Id.* at 14, ll. 24; 15, ll. 10–11.)

On August 5, 2008, Mr. Bell wrote a letter to defense counsel stating that because of Mr. Eberhart's "disclosure" to the court that Mr. Martinez was present during the testing and/or reconstruction phases with regard to the truck involved in the accident, "Mr. Martinez could very well be a witness."  (Mot., Ex. A at 2.)  Mr. Bell states he could "imagine some scenario whereby the detectives and other personnel involved in the testing procedures, contact, communication and receipt of the information, 'fed' to them by Mr. Martinez . . . could become an issue. . . ."  (*Id.*)  Mr. Bell wrote he could not state whether Mr. Martinez would be a witness

"without additional discovery and without knowing the specifics of what the witnesses are going to say, including potentially Mr. Martinez." (*Id.*) Mr. Bell then concluded by adding that he was "not asking Mr. Martinez to withdraw, as that is his decision." (*Id.*)

On August 8, 2008, Mr. Martinez wrote to Mr. Bell as a last attempt to resolve this issue without further court intervention. (Mot., Ex. C.) In his letter, Mr. Martinez states that he "simply cooperated with Detective Petrochelli [sic] by making the tractor/trailer available for inspection and subsequent testing." (*Id.*) Mr. Martinez states he did not "control, direct or otherwise influence any of the testing" done by Aurora Police Department. (*Id.*) Mr. Martinez stated as of August 8, 2008, he was keeping track of his office's time and expenses associated with this issue, and if his name was not eliminated as a witness by 5:00 p.m. on August 12, 2008, he would file the appropriate motion and request attorney's fees. (*Id.*)

On August 14, 2008, Robert Leonard, co-counsel for Plaintiff, responded in writing to Mr. Martinez. (*Id.*, Ex. D.) Mr. Leonard advised Mr. Martinez that Mr. Bell would not be able to respond to Mr. Martinez's August 12 letter until August 19. (*Id.*) Mr. Leonard further advised that he had attempted to contact Officer Petrucelli, who had been on vacation and unavailable. (*Id.*) Mr. Leonard requested the following from Mr. Martinez:

> all files, records, handwritten notes, correspondence, e-mails, phone records and documentation that you had or created with respect to your involvement in this matter prior to the lawsuit being filed, including your time and involvement in February and/or March of 2005 and thereafter. Please also provide copies of all billing statements you sent to your client(s), including time records that you had or created at the pertinent time. Obviously, we do not want nor are we requesting any attorney-client privilege documentation or information.

4

(*Id.*)  Mr. Leonard stated that if Mr. Martinez would provide this documentation concerning his involvement from the beginning, they "might be able to make a determination as to whether or not [Mr. Martinez] might be a witness in this case."  (*Id.*)

Later on August 14, 2008, Mr. Martinez again wrote to Mr. Bell, advising him that he had spoken to Detective Petrucelli and that he was aware Mr. Leonard had also spoken to him, thereby giving Mr. Leonard the opportunity to confirm Mr. Martinez's involvement or lack thereof in the case.  (Reply, Ex. E.)  Mr. Martinez wrote that the information requested by Mr. Leonard would not be provided, as his communications with his client were not relevant or discoverable, and that they contained privileged communications.  (*Id.*)  He informed Mr. Leonard that he would be filing his motion for protective order later that day.  (*Id.*)  Mr. Martinez did, in fact, file his motion for protective order and to strike on August 14, 2008, but was directed by the Clerk of Court to re-file the motion because it was undated.  (Doc. No. 15.)  Mr. Martinez properly filed the present motion on August 14, 2008.  (Mot.)

On August 26, 2008, Plaintiff served a request for production of documents on Defendant Priority Transportation, LLC, requesting, in part:

> Any and all files, records, handwritten notes, correspondence, e-mails, phone records and documentation of Frederick Martinez which he had or created with respect to his involvement in this matter prior to the lawsuit being filed, including all documents and/or records and/or information given to the Aurora Police Department, the Colorado State Patrol, the Arapahoe County District Attorney or other authorities in February and/or March of 2005 and thereafter.

(Reply, Ex. I, ¶ 1.)

5

**ANALYSIS**

*I. Conferral Pursuant to Local Rule 7.1A*

As an initial matter, the court notes Plaintiff alleges that Defendants failed to confer in good faith regarding this matter. The court disagrees. The parties discussed this matter on numerous occasions and were not able to come to a resolution. The court does not believe this motion was filed in bad faith, as Plaintiff suggests.

*II. Rule 26(a)(1) Disclosure*

Pursuant to Fed. R. Civ. P. 26(a)(1), a party must provide to other parties the name, address, and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1) (2008). Rule 26(a)(1) provides that "initial disclosures must be based upon a 'reasonable inquiry' by counsel or the disclosing party, and must be 'complete and correct as of the time [they] are made.'" *Lobato v. Ford*, 2007 WL 2593485, at *5 (D. Colo. Sept. 5, 2007). Furthermore,

> Before making initial disclosures, parties must make a reasonable inquiry into the facts of the case. Parties need not conduct an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings.

*Id.* (quoting *Lintz v. American General Finance, Inc.*, 1999 WL 619045, *3 (D. Kan. 1999) (internal quotations omitted)).

"[T]he Rule 26(a)(1) disclosure requirements should 'be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to

accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations.'" *Lobato*, 2007 WL 2593485, at *5 (quoting Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a)).

Plaintiff argues that Mr. Martinez has not been endorsed as a witness but has properly been identified pursuant to Rule 26(a) as a person with knowledge and likely to have discoverable information concerning the matters at issue in this case. Although the court believes Plaintiff's counsel has engaged in some gamesmanship in his disclosure of Mr. Martinez as a witness, the court also finds that, at the time Plaintiffs disclosed Mr. Martinez, the disclosure was based upon a reasonable inquiry by counsel and likely was complete and correct as of the time it was made. *Lobato*, 2007 WL 2593485, at *5. Thus, the court agrees with Plaintiff that the <u>initial</u> disclosure of Mr. Martinez as a person likely to have discoverable information that the plaintiffs would use to support its claims was proper. Therefore, to the extent Defendants request that Mr. Martinez be stricken from the initial disclosures, the motion is DENIED.

## III. *Motion for Protective Order*

Rule 26(b)(1) limits the scope of discovery to any <u>nonprivileged</u> matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). This principle of broad discovery is intended to allow the parties to learn as much as they can about each other's claims and defenses before trial. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979)("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials."). The federal discovery

7

rules are a reflection of the courts' and Congress' recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

Rule 26(b)(3) prevents discovery of an attorney's work product unless (1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship. *See* Fed. R. Civ. P. 26(b)(3) (codifying work product doctrine first recognized by Supreme Court in *Hickman v. Taylor*). In managing discovery, Rule 26(c) provides that the court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The Tenth Circuit has explained that "Rule 26(c) is broader in scope than the attorney work product rule, attorney-client privilege and other evidentiary privileges because it is designed to prevent discovery from causing annoyance, embarrassment, oppression, undue burden or expense not just to protect confidential communications." *Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995).

The attorney work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006)(quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643,

8

668 (10th Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3)). *See Hickman v. Taylor*, 329 U.S. at 510 ("[A]n attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties . . . falls outside the arena of discovery."). "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, *i.e.*, fact work product, which may be discoverable under appropriate circumstances." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1186. "The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Mr. Martinez has made several attempts to clarify his involvement in the case. Plaintiff's counsel have refused to accept any such clarification. Instead, Plaintiff persists in not only refusing to withdraw the disclosure of Mr. Martinez as a witness, but also in propounding discovery requests directed to Defendant Priority Transportation, LLC, specifically related to their attorney-client relationship with Mr. Martinez. (*See* Reply, Ex. I, ¶ 1.)

Plaintiff asserts disingenuously that Mr. Martinez was acting in the capacity of a risk manager or investigator, rather than as an attorney, when the truck was being tested by the Aurora Police Department. (Resp. ¶ 5.) Plaintiff further argues, citing *Resolution Trust Corp. v. Dabney* 73 F.3d 262, 266 (10th Cir. 1995) and *Compton v. Safeway*, that the work product doctrine is intended only to guard against divulging the attorney's strategies and impressions but that it does not protect against facts concerning the creation of work product or facts contained within work product. (*Id.* ¶ 5.) These cases are distinguishable. In *Resolution Trust Corp.*, an

9

attorney representing the defendants instructed a deponent not to answer questions because they might seek information protected by the work product privilege. The deponent was an investigator who was hired by the plaintiff to evaluate loans that were the subject of the suit. In *Compton*, defense counsel objected to discovery requesting copies of a statement prepared by an employee in the defendant's risk management and loss control department regarding an fall and injury of the plaintiff. In both of these cases, the courts found the discovery sought was prepared in the ordinary course of business and not in anticipation of litigation.

     Here, it is not the attorney who is asserting the work product doctrine to protect information received by an investigator or employee of the trucking company in the ordinary course of business, but the attorney who is asserting the work product doctrine to protect information received by him in his role as attorney for the defendant trucking company. Attached to their reply, Defendants attach the Affidavit by Daniel P. Gerash, an attorney who represented Mr. Blake in connection with potential criminal charges related to the accident. Reply, Ex. G ¶ 5, "Gerash Aff.".) Mr. Gerash states, "On or about February 13, 2005, I was contacted by Mr. Frederick T. Martinez in connection with potential criminal representation of a Mr. Travis Blake. <u>At that time, Mr. Martinez informed me that he represented Priority Transportation in connection with any potential civil litigation that might ensue.</u>" (*Id*. ¶ 3, emphasis added.) Also attached to Defendants' reply is the Affidavit by Dr. Richard W. Carr, who was employed by Priority America Inc. as the Director of Risk Management. (Reply, Ex. H ¶ 1, "Carr Aff.".) Mr. Carr states, "On or about February 11, 2005, I learned of a potential fatality involving Mr. Oskars Aberkalns and a Priority American, Inc. employee, Mr. Travis

10

Blake." (*Id.* ¶ 2.) Mr. Carr goes on to explain, "On or about February 12, 2005, I contacted Mr. Frederick Martinez . . . to <u>retain [him] in connection with any potential litigation (criminal or civil) that might ensue.</u>" (*Id.* ¶ 3, emphasis added.) Thus, it is clear that Mr. Martinez was retained as counsel for Priority Transportation, LLC, in anticipation of litigation. He was not acting as acting as a risk manager or investigator. Moreover, the court finds that, although the plaintiffs may have shown a substantial need for the material and information sought, the information sought by the plaintiffs can be obtained by other means without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)

The Colorado Rules of Professional Conduct state that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." Colo. R. Professional Conduct 3.7(a). "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Colo. R. Professional Conduct 3.7(b)(1). Rule 3.7(a) prohibits a lawyer from simultaneously serving as advocate and necessary witness. Colo. R. Professional Conduct 3.7(b)(3). Therefore, if Mr. Martinez is required to be a witness, he will have to withdraw from his representation of the defendants.

Plaintiff's disclosure of Mr. Martinez as a witness, and then submission of discovery requests to Defendant Priority Transportation, LLC, requesting information related to Mr. Martinez's representation of the defendant, seems to be a blatant attempt to force Mr. Martinez's withdrawal from the case and also to cause undue burden or expense.

Accordingly, for the above reasons, to the extent Plaintiffs seek to call Mr. Martinez as a witness, the Motion for Protective Order (Doc. No. 16) is GRANTED. Plaintiffs will not be permitted to call Mr. Martinez as a witness. Additionally, the Motion for Protective Order is GRANTED as to Request for Production number 1 contained in the Request for Production of Documents to Defendant Priority Transportation, LLC, and the defendant is directed not to respond to the request for production.

### IV.     *Motion for Sanctions*

Defendants refer to Fed. R. Civ. P. 26(c) for their requested protective order. That rule, however, applies only to discovery. As of the filing of the motion for protective order, Plaintiffs had served no formal discovery to precipitate the motion. It thus appears that Rule 26(c) has no applicability to the motion as initially submitted. However, prior to the filing of the reply, Plaintiffs did submit a formal discovery request directed to Priority Transportation, Inc., seeking attorney work product information. The formal discovery seeks information subject to the proposed protective order. Although the requests for discovery came after the motion, the court, nevertheless, finds Rule 26(c) applicable to the extent the motion seeks protection from that discovery. Such finding appears consistent with the dictates of Fed. R. Civ. P. 1 that the court construe and administer the Federal Rules of Civil Procedure in a manner "to secure the just, speedy, and inexpensive determination of every action."

In light of the efforts made by the defendants to avoid the filing of this motion and to resolve this issue, and further in light of Plaintiffs' counsel's refusal to cooperate, the court is not aware of any circumstances that would make an award of expenses unjust here. The court

therefore rules that Defendants shall be allowed to recover the reasonable expenses, including attorney fees, that they incurred in bringing the Motion for Protective Order.

The court recognizes that before sanctions may be imposed, the court must afford the party an "opportunity to be heard." *See* Fed. R. Civ. P. 37(a)(4)(A). The Advisory Committee Notes to the 1993 Amendments to Rule 37(a)(4) make it clear that the Court may consider the issue of sanctions "on written submissions." Here, Defendants specifically requested expenses in their Motion for Protective Order. Plaintiff responded to the Motion and asked the court to deny Defendants' request for sanctions. The court therefore finds that Plaintiffs have had sufficient "opportunity to be heard" within the meaning of Fed. R. Civ. P. 37.

Counsel are ordered to meet and confer for the purpose of preparing and filing a stipulated accounting of the reasonable costs and expenses incurred in bringing the Motion for Protective Order to be filed on or before March 2, 2009. If, after such conference, the parties are unable to stipulate on a reasonable amount to be awarded pursuant to the court's Order, each party shall file its own accounting of the reasonable costs and expenses on or before March 2, 2009. If such separate accountings are necessary, each side should address the issue of an award of additional costs and expenses associated with the preparation and presentation of the contested accountings.

Dated this 9th day of February, 2009.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge